

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**08/12/2008**

| | | |
|---|---|---|
| IN RE: | § | |
| **STEPHANIE R. ROQUMORE** | § | **CASE NO: 06-36406** |
| **Debtor(s)** | § | |
| | § | **CHAPTER 7** |

| | | |
|---|---|---|
| IN RE: | § | |
| **SRR ENERGY MANAGEMENT** | § | **CASE NO: 06-36325** ✓ |
| **RESOURCES, INC.; dba GAS ENERGY** | § | |
| **MANAGEMENT** | § | |
| **Debtor(s)** | § | |
| | § | **CHAPTER 7** |

## MEMORANDUM OPINION

#54

### *Background*

On November 10, 2006, SRR Energy Management ("SRR") filed a chapter 7 bankruptcy petition. William West was appointed as SRR's chapter 7 trustee.  On November 15, 2006, Stephanie R. Roqumore ("Roqumore") filed a chapter 7 bankruptcy petition.  Ronald Sommers was appointed as Roqumore's chapter 7 trustee.  Roqumore owns 100% of SRR's stock.  Soon after the bankruptcy filings, the trustees commenced several adversary proceedings on behalf of the SRR and the Roqumore bankruptcy estates.  On April 4, 2008, the trustees filed a joint motion to compromise three adversary proceedings ("the Compromise").

Trustee Sommers commenced two adversary proceedings that would be resolved by the proposed Compromise.  On December 6, 2006, Trustee Sommers commenced a fraudulent transfer adversary proceeding against Roqumore's mother (case no. 06-03691).   Trustee Sommers seeks to avoid under §§ 544, 548, and 550 Roqumore's transfer of a home to her mother.  On December 27, 2007, Trustee Sommers commenced a discharge objection adversary proceeding against Roqumore (case No. 07-03512).  On June 1, 2007, Roqumore obtained a

chapter 7 discharge. Trustee Sommers seeks to vacate Roqumore's discharge under § 727 based on allegations that Roqumore made false statements in her schedules and testimony, and transferred assets to the detriment of creditors.

On April 10, 2008, Trustee West commenced an adversary proceeding seeking to avoid under §§ 528 and 550 transfers in the amount of $200,000 from SRR to State Farm (case No. 08-03121). The funds were used to purchase and pay premiums on three life insurance policies on Roqumore's life. Roqumore is the primary beneficiary of the policies. Roqumore's mother is the secondary beneficiary. Any proceeds paid to Roqumore's mother must be held in trust for the benefit of Roqumore's minor son.

Trustees Sommers and West have not been able to complete discovery in the adversary proceedings. In April of 2007, Roqumore was diagnosed with cancer. Since the diagnosis, discovery has been delayed to accommodate Roqumore's health and treatments.

On March 24, 2008, the trustees and the defendants participated in a mediation. The mediation produced the trustees' proposed Compromise.

Under the Compromise, Roqumore agrees to the following:

> ▪ Execute a judgment in the amount of $111,500 against Roqumore and in favor of the Roqumore bankruptcy estate. Installment payments will be made to Trustee Sommers in the amount of $3,097.22/month for 36 months. Payments will commence on August 1, 2008 and continue until Trustee Sommers receives $111,500. No interest will accrue.

> ▪ Execute a judgment in the amount of $100,000 against Roqumore and in favor of the SRR estate. Installment payments will be made to Trustee West in the amount of $2,777.78/month for 36 months. Payments will commence on August 1, 2008 and continue until Trustee West receives $100,000. No interest will accrue.

> ▪ Maintain annual premium payments on two life insurance policies. Roqumore will not pledge, transfer, or encumber the cash surrender value of the policies. As of March 24, 2008, the cash surrender values of the policies are $22,207.37 and $22,684.95.

▪ Trustees Sommers and West may exercise any collection rights authorized by state or federal law if Roqumore fails to perform any obligation required by the Compromise.

▪ Pay $2,5000 to Trustee Summers for the benefit of the Roqumore bankruptcy estate. Payment is for Roqumore's interest in a Florida time-share.

▪ Release all claims against the Roqumore and SRR bankruptcy estates.

Roqumore's mother agrees to the following:

▪ Pay $10,000 to Trustee Sommers for the benefit of the Roqumore bankruptcy estate. Payment shall be made on the later of May 1, 2008 or 10 days after entry of an order approving the Compromise. Payment will be secured by a deed of trust granting a first priority lien on her property at 14415 Fleetwell Drive, Houston, Texas 77045. Trustee Sommers will also be added as a co-loss payee to the Fleetwell Drive property's insurance.

▪ Release all claims against the Roqumore and SRR bankruptcy estates.

Trustee Summers agrees to the following:

▪ Dismiss the discharge adversary with prejudice.

▪ Abandon the Roqumore bankruptcy estate's interest in Roqumore's Florida time-share.

▪ Upon receipt of $10,000, abatement and entry of a take nothing judgment against Roqumore's mother in the fraudulent transfer adversary.

▪ Upon receipt of $111,500, release all of Roqumore's bankruptcy estate's claims against Gas American Resources, Inc. ("GAR"). GAR is wholly owned by Roqumore.

▪ Termination of Roqumore's pending Rule 2004 examination.

▪ Not to bring any action, lawsuit, or cause of action against Mary Roqumore, Andrew Bauknight, Tommy Roqumore, Derek Roqumore, and Alan Roqumore.

▪ Upon payment of $111,500, release all claims against Roqumore related to GAR.

▪ Release claims against Roqumore and Roqumore's mother.

Trustee West agrees to the following:

▪ Abatement of the State Farm Insurance adversary proceeding.  Upon payment of $100,000, Trustee West will dismiss with prejudice the State Farm adversary and release any interest of the SRR estate in the policies.

▪ Agreement not to bring any action, lawsuit, or cause of action against Mary Roqumore, Andrew Bauknight, Tommy Roqumore, Derek Roqumore, and Alan Roqumore.

▪ Release claims against Roqumore and Roqumore's mother.

The Roqumore individual bankruptcy case was assigned to Judge Isgur.  The SRR corporate bankruptcy case was assigned to Judge Steen.  Motions to compromise controversy were filed in both bankruptcy cases. Although no objections to the motions were filed, both Judges Isgur and Steen were concerned about the proposed Compromise.  Accordingly, on June 16, 2008, Judges Isgur and Steen held a joint evidentiary hearing.  For the reasons set forth below, Judges Isgur and Steen find that the Compromise is not fair, equitable or in the best interest of either the Roqumore or the SRR estate.

### *Jurisdiction*

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(N).  Venue is proper under 28 U.S.C. § 1409.

### *Law*

Federal Bankruptcy Rule 9019 authorizes bankruptcy courts to approve compromises and settlements.[1]  Ultimately, a compromise must be "fair, equitable, and in the best interest of the estate." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414, 424–25 (1968)).

---

[1] The Rule provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct." FED. R. BANKR. P. 9019(a).

When considering whether a compromise is "fair, equitable, and in the best interest of the estate," the Court must weigh the "terms of the compromise with the likely rewards of litigation." *Id.* Within the 5th Circuit, courts must consider:

> (1) The probability of success in the litigation, with due consideration for the uncertainty in fact and law,
>
> (2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and
>
> (3) All other factors bearing on the wisdom of the compromise.

*Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997); *Jackson Brewing*, 624 F.2d at 602.

The 5th Circuit has articulated two additional specific factors from the general "bearing on the wisdom of the compromise" factor:

> ▪ Whether the compromise serves "the paramount interest of creditors with proper deference to their reasonable views." *Cajun Elec.*, 119 F.3d at 356; *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995) (citing *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929)). When applying this factor, courts generally consider the consideration offered by the settling party and the degree to which creditors object. *See Cajun Elec.,* 119 F.3d 349; *Foster Mortgage*, 68 F.3d 914; *U.S. v. AWECO, Inc.*, 725 F.2d 293 (5th Cir. 1984).
>
> ▪ "[T]he extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion." *Foster Mortgage*, 68 F.3d at 918.

The Trustee bears the burden of establishing that the balance of the above factors supports a finding that the compromise is fair, equitable and in the best interest of the estate. *In re Lawrence & Erausquin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990) (citing *In re Hermitage Inn, Inc.*, 66 B.R. 71, 72 (Bankr. D. Colo. 1986)); *In re GHR Cos., Inc.*, 50 B.R. 925, 931 (Bankr. D. Mass. 1985). "[C]ompromises are a normal part of the process of reorganization, oftentimes desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *Cajun Elec.*, 119 F.3d at 354 (quoting *Jackson Brewing*, 624 F.2d at

602). Accordingly, the Trustee's burden is not high.   The Trustee need only show that his decision falls within the "range of reasonable litigation alternatives." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2nd Cir. 1983), cert. denied, 464 U.S. 822, 104 S.Ct. 89; *Cook v. Waldron*, 2006 WL 1007489 at *4 (S.D. Tex. Apr. 18, 2006); *Nellis v. Shugrue*, 165 B.R. 115 (S.D. N.Y. 1994).

The decision to approve a compromise "lies within the discretion of the trial judge." *AWECO*, 725 F.2d at 297. The Court need not "conduct a mini-trial to determine the probable outcome of any claims waived in the settlement." *Cajun Elec.*, 119 F.3d at 355. However, the Court must actually use its discretion.   The Court can not "simply accept the trustee's word that the settlement is reasonable, nor may he merely 'rubber-stamp' the trustee's proposal." *In re Am. Reserve*, 841 F.2d 159, 162 (7th Cir. 1987) (quoting *TMT Trailer*, 390 U.S. at 434).   The Court "must be informed of all the relevant facts and information in order to make an independent judgment as to whether the settlement is fair and reasonable under the circumstances." *Cook*, 2006 WL 1007489 at *4. *See also Jackson Brewing*, 624 F.2d at 602 ("To assure a proper compromise the bankruptcy judge must be apprised of all the necessary facts for an intelligent, objective and educated evaluation.").

### *Analysis*

The Court recognizes that the adversary proceedings subject to the Compromise involve both factual and practical complexities.  Roqumore allegedly made numerous transfers to and from SRR, GAR, bank accounts, casinos, and insurance policies.   Tracing and identifying transferred funds requires extensive discovery and analysis.  Prosecuting the actions would not be easy even if the defendant was fully cooperative in the discovery process.  Here, discovery has been hindered by Roqumore's health.  In addition, Trustee Sommers reports that, irrespective of health issues, Roqumore has been less than forthright with respect to discovery.

Nevertheless, the Court cannot approve the Compromise. The Court considers the Compromise's affect on the SRR and Roqumore bankruptcy estates separately below.

### i. The SRR Estate

The Court finds that the Compromise is not fair, equitable, or in the best interest of the SRR estate based on the inadequate value given to the estate and the Compromise's effect on the SRR bankruptcy estate's closure.

The Compromise, on paper, does transfer some value to the SRR estate. The SRR estate will receive an agreed judgment in the amount of $100,000.

After consideration of the evidence presented at the hearing, the Court concludes that the judgment is probably worthless. Under the Compromise, Roqumore is required to make monthly payments totaling $5,875 on the $100,000 and $111,500 judgments. But Roqumore is not currently employed. Her health makes future employment questionable. Roqumore's counsel could not identify any source of funds from which Roqumore could make the payments.

Moreover, the judgment is not secured. The Compromise does provide for seizure of the cash surrender value of two insurance policies in case an installment is missed. However, the cash surrender value is illusory. Roqumore has agreed that, upon a default under the Compromise, Trustee West may exercise any state or federal law remedies. But that would require legal action and nothing prevents dissipation of the cash surrender values prior to completion of a collection action. Although Roqumore also has agreed to maintain the cash surrender value of the two insurance policies in the amounts of $22,207.37 and $22,684.95, there is no legal mechanism to insure that the promise is kept.[2] Moreover, there is simply no

---

[2] Additionally, the Compromise fixes the cash surrender value based on the value as of March 24, 2008. Assumingly, the cash surrender value has increased and will continue to increase after March 24. If the cash

assignment of the policy contemplated by the Compromise and no explanation of why not. Upon the insured's death, the policy proceeds are paid to the policy's beneficiary. Once the proceeds are paid, the policy has no cash surrender value. The SRR estate is not named a beneficiary of the policies. Given Roqumore's cancer diagnoses, her health is uncertain.

The Compromise also contemplates keeping the SRR case open for a period of time that is prejudicial to the SRR estate's creditors. Even if Roqumore finds a source of employment or funds to make the installment payments, the SRR bankruptcy estate will remain open for the 3 year installment term. During that period, the SRR bankruptcy estate will incur further expenses, the bankruptcy case cannot be closed, and SRR's creditors will not receive distributions.[3] This is a 2006 case; it is already over 2 years old. The estate will be over 5 years old before the Trustee can even start the administrative procedures to close the case.

In some cases, rather than keeping cases open for an installment period, agreed judgments might be sold by the Trustee for a discounted amount. The discounted but immediate sale permits a timely distribution to the estate's creditors. The Court has little confidence that the Roqumore judgments would be marketable.

The material value provided to the estate is an important factor to consider when evaluating a compromise. *In re Martin*, 91 F.3d 389, 393 (3rd Cir. 1996) (courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal"); *In re Allied Properties, LLC*, 2007 WL 1849017 at *7 (Bankr. S.D. Tex. June 25, 2007) (rejecting a compromise because the settling defendant

---

surrender value as of March 24 equaled the $211,500 due under the judgments, the fixed value would be reasonable. However, as of March 24, the cash surrender value of the two policies totals only $44,892.32. No party to the Compromise adequately explained why the cash surrender value should be fixed at the March 24 value.

[3] The Compromise does not provide for interim distributions.

offered no material benefit to the estate). Courts must "estimate the value" provided to the estate and compare it to the value of the claims to be settled. *In re Res. Tech. Corp.*, 356 B.R. 435, 443 (Bankr. N.D. Ill. 2006). The likelihood of payment is a factor that affects a value estimation. *Till v. SCS Credit Corp.*, 541 U.S. 465, 479, 124 S. Ct. 1951 (2004) (holding that, when calculating the present value of a secured creditor's claim, courts should consider the "risk of nonpayment"). Moreover, courts routinely consider a defendant's ability to pay when considering compromises. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 467 (2nd Cir. 1974); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 429 (S.D. N.Y. 1993) ("A defendant's ability to pay is a factor in evaluating a settlement.").

Given Roqumore's failure to explain how the installment payments will be made, the agreed judgments have de minimis value. Considering the de minimis value and the absence of testimony stating that the judgments can not be more adequately secured, the Court is unwilling to find that the Compromise is fair, equitable, and in the best interest of the estate.

### *ii. The Roqumore Estate*

The Court finds that the Compromise is not fair, equitable, or in the best interest of the Roqumore estate because it is inconsistent with the basic purposes and policies of the Bankruptcy Code. The Trustee has raised serious allegations that Roqumore engaged in inequitable and unlawful conduct. Despite the alleged conduct and Roqumore's likely default under the Compromise, the Compromise protects Roqumore's discharge regardless of default.

Under the Compromise, Trustee Sommers agrees to dismiss with prejudice the discharge adversary proceeding and release all claims against Roqumore. The dismissal and release will be effective on the date the Court approves the Compromise. The dismissal and release are not contingent upon Roqumore's performance under the Compromise. Roqumore could make a

single payment or no payments on her $100,000 and $111,500 agreed judgments and she would

still receive her discharge and release.

Default on the agreed judgment is not unrealistic. As discussed above, Roqumore was

diagnosed with cancer, is unemployed, and has stated no source of income from which monthly

payments of $5,875 will be made. Moreover, Trustee Sommers' allegations suggest Roqumore

has shown no hesitancy to ignore legal obligations. At the hearing on the Compromise, Trustee

Sommers' uncontradicted testimony was that his allegations of misconduct were highly likely to

be provable at a final trial on the merits.

Trustee Sommers' discharge adversary makes allegations that, if proven, would revoke

Roqumore's bankruptcy discharge. Trustee Sommers' § 727 discharge complaint alleges that

Roqumore engaged in the following conduct:

> ▪ Failed to disclose several insurance policies and the policies' cash surrender
> values.
>
> ▪ Transferred hundreds of thousands of dollars from SRR to insurance policies
> within a year of her bankruptcy petition and after being sued for approximately
> $1.5 million.
>
> ▪ Failed to disclose assets and income of GAR. GAR was 100% owned by
> Roqumore. Roqumore stated that GAR had only $1,000 to $2,000 in its accounts
> and no other substantial assets. Roqumore also stated that GAR received no
> income during the three months prior to her bankruptcy petition and would
> receive no income in January of 2007. However, GAR in fact received
> approximately $350,000 in October of 2006, less than a month before she filed
> her bankruptcy petition. Some of the $350,000 was spent at Casinos and for other
> personal expenses. A large portion is unaccounted for.
>
> ▪ Transferred significant sums from SRR for personal expenses for herself,
> mother, and other family members.
>
> ▪ Transferred a home with a $200,000–$300,000 value to her mother within a year
> of her bankruptcy petition.
>
> ▪ Encumbered assets with the intent to defraud creditors. Roqumore's schedules
> stated that she owned three Lexis vehicles. Roqumore testified that each vehicle

was subject to a security interest and that she had no equity in the vehicles. However, months before filing her bankruptcy petition, Roqumore took out loans in the amount of approximately $48,000 on two of the vehicles.  Prior to the loans, Roqumore owed nothing on the vehicles.  The $48,000 in loan proceeds have not been accounted for.

▪ Provided false and misleading testimony regarding the transfer of certain artwork.  Roqumore's Statement of Financial Affairs stated that she transferred $301,500 worth of African artwork to Texas Southern University approximately 13 moths before filing her bankruptcy petition.  Roqumore's tax return indicates that she transferred an additional $203,000 in African artwork in 2004.  In fact, Roqumore only paid approximately $21,750 for the artwork.  Trustee Sommers sold the artwork for approximately $5,000.[4]

▪ Gambled with estate assets.  During the days and weeks after receiving credit counseling and filing her bankruptcy petition, Roqumore gambled tens of thousands of dollars.

▪ Disseminated false SRR financial statements to SRR creditors.  The SRR financial statements indicated that SRR had $14.6 million in "property, plant and equipment."  In fact, SRR had at most $7,500 in assets.

▪ Made false statements during a deposition and at a § 341 creditors' meeting with respect to the existence and value of assets.

Compromises of § 727 claims are viewed with heightened scrutiny.  Section "727(a) is directed toward protecting the integrity of the bankruptcy system by denying discharge to debtors who engaged in objectionable conduct that is of a magnitude and effect broader and more pervasive than a fraud on . . . a single creditor." *In re Chalasani*, 92 F.3d 1300, 1311 (2nd Cir. 1996). Accordingly, some courts have held that § 727 claims may never be compromised. *In re Vickers*, 176 B.R. 287, 290 (Bankr. N.D. Ga. 1994) ("It is against public policy to sell discharges . . . Selling discharges would be a disease that would attack the heart of the bankruptcy process, its integrity."); *In re Moore*, 50 B.R. 661, 664 (Bankr. E.D. Tenn. 1985) ("A

---

[4] Trustee Sommers testified that he obtained the services of a qualified art expert, who advised Sommers that he could not appraise the artwork because it was "Pier One Art", meaning that it was the kind of art work sold at the Pier One chain retain store, and not museum quality art.  At the hearing, the Court questioned whether the trustee would advise the Internal Revenue Service of the possible tax issues resulting from taking more than $500,000 in tax deductions for art work that was worth less than the $21,750 Roqumore paid for it.

discharge in bankruptcy depends on the debtor's conduct; it is not an object of bargain."). At the very least, courts view compromises of § 727 claims with heightened scrutiny. *In re Traxler*, 277 B.R. 699, 705 (Bankr. E.D. Tex. 2002) ("the policy should be to view § 727 settlements with heightened skepticism and to subject them to close scrutiny by the bankruptcy court").

Trustee Sommers' allegations are serious, and his uncontradicted testimony at the hearing on the Compromise is even more serious.  Each allegation, if proven, would independently justify revocation of Roqumore's discharge under § 727(d).  Trustee Sommers' complaint raises ten separate allegations.  There probably are circumstances in which it would be appropriate to compromise allegations that a discharge should be revoked.  But this is not a case in which the trustee contends that the allegations supporting revocation would be hard to prove, and it is not even a situation in which the debtor must perform under the compromise in order to get the benefit of dismissal of the adversary proceeding seeking to revoke the discharge.  Although Trustee Sommers is better positioned than Trustee West, (because Trustee Sommers has the benefit of partial collateral supplied by Roqumore's mother) nevertheless, it remains true that Roqumore herself need not perform any part of the Compromise to obtain dismissal of the discharge revocation adversary.  A compromise that allows this result is inconsistent with the basic purposes and public policies embodied by the Bankruptcy Code. "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the '*honest* but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass*, 127 S.Ct. 1105, 1107 (2007) (emphasis added).

Based on the seriousness of Trustee Sommers' allegations, a trustee's right to be given honest answers and accurate documents, creditors' right to receive payment on legitimate debts, the integrity of this Court, and the principal purposes and policies of the Bankruptcy Code, the

Court finds that the proposed Compromise is not fair, equitable, or in the best interest of the Roqumore estate.

***Conclusion***

For the reasons set forth above, the Court denies approval of the proposed Compromise.

Signed at Houston, Texas, on August 11, 2008.

**WESLEY W. STEEN**
**Chief United States Bankruptcy Judge**

**MARVIN ISGUR**
**United States Bankruptcy Judge**